J-S30029-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: J.A.A., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: L.A., BIRTH MOTHER | : | No. 47 WDA 2018 |

Appeal from the Decree December 8, 2017
In the Court of Common Pleas of Allegheny County
Orphans' Court at No:  CP-02-AP-0000187-2016

| | | |
|---|---|---|
| IN RE: W.A., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: L.A., BIRTH MOTHER | : | No. 48 WDA 2018 |

Appeal from the Decree December 8, 2017
In the Court of Common Pleas of Allegheny County
Orphans' Court at No:  CP-02-AP-0000186-2016

BEFORE:   BENDER, P.J.E., STABILE, J., and STRASSBURGER*, J.

MEMORANDUM BY STABILE, J.:                    **FILED JUNE 11, 2018**

L.A. ("Mother") appeals from the decrees entered December 8, 2017, in

the Court of Common Pleas of Allegheny County, which terminated

involuntarily her parental rights to her minor sons, W.A., born in December

_____

* Retired Senior Judge assigned to the Superior Court.

2006, and J.A.A., born in December 2013 (collectively, "the Children").[1] After careful review, we affirm.

The Allegheny County Office of Children, Youth and Families ("CYF") has a lengthy history of involvement with this family dating back to September 2011. N.T., 12/8/17, at 57. CYF received its most recent referral on November 28, 2014, which alleged housing issues, medical neglect, and poor parenting skills on the part of Mother. *Id.* at 60-61. CYF conducted an investigation, which revealed that Mother was intellectually limited and appeared to be hoarding food. *Id.* at 61. In addition, J.A.A. had been hospitalized several times for reactive airway disease, and Mother was failing to administer his medication properly. *Id.* at 61, 112. CYF referred Mother for in-home services. *Id.* at 62.

CYF obtained an emergency custody authorization for the Children on June 26, 2015, after J.A.A. "fell down and cut his lip open and chipped his tooth." *Id.* at 63. CYF directed Mother to take J.A.A. to hospital, but she failed to do so. *Id.* CYF was also concerned that Mother's home was cluttered and dirty, and that she was failing to provide appropriate supervision for the

---

[1] The trial court also terminated the parental rights of W.A.'s father, J.P.; of two potential fathers for J.A.A., D.D. and S.R.; and of any unknown father that J.A.A. may have. J.P. appealed the termination of his parental rights at Superior Court docket number 67 WDA 2018. We address his appeal in a separate memorandum. No father appealed the termination of his parental rights to J.A.A.

Children and ensure their safety. *Id.* at 63-64. The Children were adjudicated dependent on August 15, 2015. *Id.* at 66.

On October 20, 2016, CYF filed petitions to terminate Mother's parental rights to the Children involuntarily. CYF filed an amended petition as to J.A.A. on August 8, 2017. The trial court conducted a hearing on December 8, 2017, after which it entered decrees terminating Mother's parental rights.[2] Mother timely filed a notice of appeal on January 4, 2018, along with a concise statement of errors complained of on appeal.

Mother now raises the following question for our review: "Did the trial court abuse its discretion and/or err as a matter of law in concluding that CYF met its burden of proving by clear and convincing evidence that termination of Mother's parental rights would best serve the needs and welfare of the [C]hildren pursuant to 23 Pa.C.S.[A.] §[]2511(b)?" Mother's Brief at 9.

We review Mother's issue mindful of our well-settled standard of review:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously

_____

[2] The Children had the benefit of separate legal counsel during the hearing. They remain represented on appeal.

emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

***In re L.M.***, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the trial court terminated Mother's parental rights pursuant to Section 2511(a)(2), (5), (8), and (b), which provides as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> ***

> > (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity,

abuse, neglect or refusal cannot or will not be remedied by the parent.

\*\*\*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\*\*\*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\*\*\*

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (5), (8), and (b).

In her brief on appeal, Mother makes no effort to argue that the trial court abused its discretion by terminating her parental rights pursuant to Section 2511(a). Mother also failed to include Section 2511(a) in her concise statement and statement of questions involved. Therefore, Mother waived any challenge to Section 2511(a), and we focus our attention on Section 2511(b). *See In re M.Z.T.M.W.*, 163 A.3d 462, 465-66 (Pa. Super. 2017) (holding that the appellant waived Section 2511(a) by failing to develop it in her brief, and that she waived Section 2511(b) by failing to include it in her concise statements and statement of questions involved). The requisite analysis is as follows:

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)) (quotation marks and citations omitted).

Here, Mother argues that CYF failed to present clear and convincing evidence with respect to Section 2511(b). Mother's Brief at 14-19. Mother contends that the trial court relied heavily on the testimony of psychologist, Neil Rosenblum, Ph.D., who evaluated the Children and recommended that they be adopted by their foster parents. *Id.* at 14. Mother insists that Dr. Rosenblum made his recommendation contingent "on the hope or expectation that Mother will be allowed to have ongoing contact with [the Children.]" *Id.* at 14, 18. However, ongoing contact cannot be assured if her parental rights are terminated. *Id.* Mother directs our attention to Dr. Rosenblum's conclusion that the Children love Mother, and would derive a benefit from maintaining contact with her and with their other maternal relatives. *Id.* at 14-15, 18-19.

In its opinion, the trial court found that there is no possibility that the Children will ever return to Mother's care, due to her significant intellectual limitations and inability to live independently, among other things. Trial Court Opinion, 2/6/18, at 10-11. The court further found that the Children have "a 'relationship' of sorts with Mother," but that this relationship is not so substantial that severing it will subject the Children to a negative psychological impact. *Id.* at 11. The court reasoned that the Children had been in care for more than two and a half years, and that Mother has had only sporadic contact

with them during that time. *Id.* at 9. In addition, the Children are benefiting from the care of their pre-adoptive foster parents, who can provide the Children with the loving and stable environment they need. *Id.* at 11-12.

After a thorough review of the record in this matter, we conclude that the trial court did not abuse its discretion. During the termination hearing, Dr. Rosenblum testified that he conducted a series of psychological evaluations involving Mother, the Children, and Children's foster parents between August 2016 and November 2017. N.T., 12/8/17, at 8-9, 11, 18. Based on these evaluations, Dr. Rosenblum opined that Mother lacks the capacity to parent the Children. *Id.* at 17. Dr. Rosenblum explained that he diagnosed Mother with a mild intellectual disability. *Id.* at 12. Mother has never maintained consistent employment or her own housing. *Id.* Moreover, Mother has limited capabilities in terms of being able to shop, cook, and travel to different places in the community. *Id.* at 13. Dr. Rosenblum explained that Mother's limitations make it "challenging for her to function independently as an adult let alone assuming the responsibility to care for two children." *Id.* at 18.

Concerning Mother's relationship with the Children, Dr. Rosenblum testified that Mother is far more responsive to J.A.A. than W.A. *Id.* at 14. Mother "largely ignored" W.A. during the evaluations unless Dr. Rosenblum prompted her to interact with him. *Id.* W.A. "was totally fine with not interacting with his mother at all, and he openly has said to me I believe on

more than one occasion that he wants to stay where he is . . . ." *Id.* at 16. Meanwhile, J.A.A. became disruptive and aggressive while in Mother's presence. *Id.* at 14-15. Dr. Rosenblum testified that J.A.A. "senses that she's not going to set any limits and he starts to throw things, hit people on occasion, and it's very difficult for [Mother] to give him any direction or promote learning activities or more age-appropriate expectations unless specifically guided or requested by me during these two evaluations." *Id.* at 15.

Dr. Rosenblum concluded that the Children share a bond with Mother, but that this bond is not a healthy or appropriate parent/child bond. *Id.* He recommended that Mother be allowed to have contact with the Children going forward, but did not believe that severing the Children's relationship with Mother would cause them severe trauma. *Id.* at 25-27. He explained:

> As far as the bond though, I mean, yes, the children know their mom. I think they love her, but they don't look to her as an authority figure. They don't look to her as someone whom they rely on for any kind of parental direction or support.
>
> She's a caring person. She's an affectionate person, but not able to promote or provide the children with appropriate supervision, which is, you know, a large reason why they were removed from her care in the first place.
>
> ***
>
> They don't look to her as the parent figure who they are -- who is going to help them[,] support them, meet their needs. They look to her as somebody who is pleasant, loving, particularly, you know, in regard to [J.A.A.], and someone who has always been in their life, but it's not a relationship where they look to her

as someone who is going to carry out necessary parental responsibilities or direction for them.

*Id.* at 15-16.[3]

Dr. Rosenblum also praised the Children's foster parents. *Id.* at 18, 25. He testified that the foster parents "are very focused, very responsible and likely to be highly successful in providing long term, very productive care and a stable environment for the boys that will help guide them in the right direction and allow them to achieve an optimal level of functioning." *Id.* at 25. Dr. Rosenblum recommended that adoption by the foster parents would be consistent with the Children's needs and welfare. *Id.*

Thus, the record supports the trial court's findings pursuant to Section 2511(b). Mother's intellectual limitations and inability to live independently render her incapable of parenting the Children. Moreover, while the Children have a relationship with Mother, they do not have a necessary and beneficial parent/child bond. The Children are now in a pre-adoptive foster home. The Children's foster parents are supportive of their needs, and can provide them with a safe and stable environment.

Importantly, the record supports the trial court's findings even though there is no guarantee that the Children will be able to maintain ongoing

---

[3] The record indicates that Mother missed many of her visits with the Children. CYF caseworker, Vickie Naccarato, testified that Mother attended only forty-two out of one hundred and eight possible visits between January 12, 2016, and December 4, 2017. N.T., 12/8/17, at 90.

contact with Mother. Contrary to Mother's argument on appeal, our review of the record reveals that Dr. Rosenblum did not make his recommendation contingent on ongoing contact. Mother's counsel cross-examined Dr. Rosenblum on this specific issue, and he testified that his recommendation would stand even if no contact takes place. *Id.* at 36.

Based on the foregoing, we affirm the trial court's December 8, 2017 decrees terminating Mother's parental rights to the Children involuntarily.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/11/2018